UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD KUCHINSKAS,

                    Petitioner,

                                        Case No. 16-cv-1054-pp

        v.

DAN WINKELSKI,

                    Respondent.

**ORDER ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 15), OVERRULING OBJECTIONS (DKT. NO. 16), DISMISSING CASE AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

On August 9, 2016, the petitioner, an inmate at New Lisbon Correctional Institution who is represented by counsel, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2011 conviction in Milwaukee County Circuit Court on one count of child neglect and two counts of child abuse with the intent to cause great bodily harm. Dkt. No. 1 at 1-2. The clerk's office assigned the case to Magistrate Judge William E. Duffin, who screened the petition, allowed the petitioner to proceed and ordered the respondent to answer. Dkt. No. 4. The respondent answered on October 27, 2016. Dkt. No. 8. Shortly after, the case was reassigned to this court. The respondent then filed his brief in opposition to the petition. Dkt. No. 11. The petitioner replied on March 31, 2017. Dkt. No. 13.

In May 2018, the court referred the case to Judge Duffin for a report and recommendation. Dkt. No. 14. On August 2, 2019, Judge Duffin issued a

1

report recommending that this court deny the petition. Dkt. No. 15. The petitioner timely filed objections. Dkt. No. 16. The court will overrule the objections, adopt Judge Duffin's recommendation, dismiss the case and decline to issue a certificate of appealability.

## I.    Background

### A.    Underlying Case

#### 1.    *Pre-trial*

The petitioner does not object to the factual recitations in Judge Duffin's report and recommendation, and this court adopts them. Judge Duffin recounted:

> On the morning of July 10, 2010, nine-week-old O.K. was rushed from his home to Children's Hospital of Wisconsin. Doctors there diagnosed O.K. with extensive physical injuries: bruises on his back, thigh, knee, groin, and both sides of his head (ECF No. 8-13 at 47-48, 51, 53); a skull fracture (ECF No. 8-13 at 54); 22 separate rib fractures, with some ribs being broken more than once (ECF No. 8-13 at 58); a broken leg (ECF No. 8-13 at 59); bleeding between his brain and skull (ECF No. 8-13 at 60); extensive retinal hemorrhages (ECF No. 8-13 at 62); two lacerations to his liver (ECF No. 8-13 at 66); and his optic nerve was disconnected, resulting in blindness in his right eye (ECF No. 8-13 at 63). A physician with expertise in child abuse (ECF No. 8-13 at 45) concluded that O.K.'s injuries must have resulted from abuse. (ECF No. 8-13 at 64.)

Dkt. No. 15 at 1-2. Judge Duffin recounted that between the petitioner and Erin Sabady, who were O.K.'s parents, Sabady took care of O.K. "90 to 95 percent of the time." Id. at 2 (citing Dkt. Nos. 8-11 at 14, 85; 8-13 at 5). The three lived with the petitioner's grandmother, Beverly Kehoss, and a friend, Steve Stessl, "who would occasionally watch O.K." Id. Judge Duffin explained that the injuries occurred during the night of July 9, 2010, after the petitioner,

Sabady, Kehoss and O.K. went shopping at Sam's Club. Id. (see also dkt. no. 8-4 at 42-43). Judge Duffin related that

> [a]t about 10:30 P.M., a neighbor was awoken by the sounds of O.K. screaming: "Very short, shrill at the top of the lungs screams. Not like a cry. Just short bursts of loud, shrill screams." (ECF No. 8-10 at 40.) He looked out his window and saw [the petitioner] with O.K. outside their home. (ECF No. 8-10 at 41.) At about 1:30 A.M., the neighbor was again awoken by O.K.'s screams and again looked outside to see [the petitioner] with O.K. (ECF No. 8-10 at 43.) And again at about 3:30 A.M. the neighbor awoke to O.K.'s screams and saw [the petitioner] outside with O.K. (ECF No. 8-10 at 43.)
>
> Between 5:00 A.M. and 6:00 A.M., Sabady awoke and saw [the petitioner] and O.K. asleep in the living room. Sabady went outside to smoke. When Stessl came home, he joined her. Soon thereafter, Sabady heard O.K. start to cry and went inside. An alarm on a breathing monitor O.K. wore was going off. Sabady saw [the petitioner] standing over O.K., panicked, trying to figure out what was wrong with O.K. They then realized that the cord connecting the sensor to the monitor had become disconnected, causing the alarm to go off. (ECF No. 8-11 at 34.) Sabady observed that O.K. looked very pale, was having difficulty breathing, and was making a grunting sound. (ECF No. 8-11 at 40.) Although his eyes were open, they were fixed and unreactive. (ECF No. 8-11 at 40-41.)

Id. at 2-3. Sabady wanted to call 911, but the petitioner "was reluctant." Id. at 3. The petitioner, while panicked, "wanted Sabady to wait to see if O.K. would improve." Id. At some point, the petitioner told Sabady that "he fell with O.K.," and that "he was concerned they would be blamed for hurting O.K. and that O.K. would be taken away from them." Id. (citing dkt. no. 8-11 at 42). "According to Sabady, [the petitioner] said, 'They're going to say that, you know, we're drug addicts; and they're going to try and say I was high.'" Id. (citing dkt. no. 8-11 at 43).

3

After Sabady eventually called 911, the petitioner "refused to be present when the paramedics arrived" and instead hid in "his grandma's bedroom." Id. (citing dkt. no. 8-11 at 44). Judge Duffin described the ensuing investigation:

> Medical personnel at Children's Hospital notified the police of their suspicions of child abuse. Police investigated, recovering bloody baby linens from the home and speaking with the members of the household. All denied intentionally injuring O.K. However, [the petitioner] acknowledged that on July 5, 2010, he was bathing O.K. in a sink when O.K. slipped from his hands and fell, landing so that he straddled the divider in the sink. (ECF No. 8-13 at 17, 51-52.) [The petitioner] also again said that he fell with O.K. on the morning of July 10, 2010. (ECF No. 8-13 at 36.) [The petitioner] reported that O.K. fell first, maybe striking his head on a rocking chair, landing on the carpeted floor, and then Kuchinskas landed on top of O.K. with his hand on O.K.'s chest. (ECF Nos. 8-13 at 47; 8- 14 at 41-42.)
>
> A physician, Dr. Angela Rabbit, opined that nearly all of O.K.'s injuries occurred no more than 10 days before his admission to the hospital and could have happened very recently—within hours. (ECF No. 8-13 at 57-59.) The only exception was a single rib fracture that probably occurred at least a week prior. (ECF No. 8-13 at 58-59.)

Dkt. No. 15 at 1-4. The State charged the petitioner with two counts of child abuse with the intent to cause great bodily harm and one count of child neglect resulting in great bodily harm. Id. at 4.

2.    *Trial in Milwaukee County Circuit Court*

At trial, the petitioner argued that someone else must have abused O.K. Id. At the start of the second day, the court addressed some evidentiary issues, including the admissibility of testimony of Sabady's drug use. Dkt. No. 8-10 at 3-4. The court asked the petitioner's trial attorney, Rick Steinberg, how the instances of drug use would be admissible:

4

THE COURT: . . . Mr. Steinberg, how are these items relevant to any of the permissible purposes under the [<u>Sullivan</u>][1] analysis?

MR. STEINBERG: They provide opportunity, intent. They provide an explanation, knowledge.

THE COURT: Okay. So let me go through them one at a time. How does her using drugs create more of an opportunity for her to have abused this child?

MR. STEINBERG: I think any person who uses drugs, just like when we talk about alcohol and drinking and driving, is more of a danger. I think anybody who uses drugs is more of a danger to the child. I think anybody who is using drugs—

THE COURT: Mr. Steinberg, that is a propensity analysis . . . . You can't use this drug use for that purpose. That is specifically what the statute precludes.

<u>Id.</u> at 21-22. The court then asked Attorney Steinberg to address how Sabady's

drug use could be relevant for other purposes:

THE COURT: . . . You also mentioned motive?

MR. STEINBERG: Motive to—Right. I think the drug use goes to motive to—Well, I don't know if motive is the right word. Intent and knowledge as far as she could forget about it. If she is on drugs she can forget about something that happened, especially if you are up for three days leading up to July 10th . . . .

THE COURT: Okay. So, basically, then you are just attacking the basic ability to perceive and recall?

MR. STEINBERG: Right.

THE COURT: Okay.

MR. STEINBERG: I think it is a motive to lie. I think it is a motive because you know you are on drugs and you are thinking to yourself, gee whiz, something terrible could have happened to the child when I had the child.

---

[1] <u>State v. Sullivan</u>, 216 Wis. 2d 768 (1998) involves the admissibility of other acts evidence in Wisconsin.

5

> THE COURT: Okay. So motive to lie is a permissible purpose. All
> right.

Id. at 23-24. The parties and the court discussed Sabady's drug use in the

context of O.K.'s medical appointments that the family either missed or

canceled, and a detective's interview of Sabady. Id. at 24-28. The court then

explained that it would reserve ruling on the issue:

> THE COURT: . . . The problem here is that it is very difficult to
> connect these things in time. We don't know exactly when these
> injuries occurred. We don't know exactly when Ms. Sabady was
> using these drugs. We don't know what kind of drugs. We don't know
> what level of intoxication occurred. We don't know whether in fact
> her ability to perceive and recall was impaired. . . . I am not going to
> make any ruling until predicate facts come in . . . [T]here is some
> relevance to motive. I agree that if she was using drugs and not
> properly caring for the child, she might have a motive to blame
> somebody else for the state of the child. And then I would have to
> decide whether the probative value of that is substantially
> outweighed by the danger of unfair prejudice, and I can't really make
> that determination until more evidence has come in.

Id. at 29-30.

After the State's direct examination of Sabady and outside the presence

of the jury, the court returned to the issue of her drug use. See dkt. no. 8-11 at

57, 61. Attorney Steinberg argued that due to inconsistencies between

Sabady's responses on direct examination and a prior interview with a

detective, "a door was open" to admit evidence of her drug use. Id. at 61-63.

The court disagreed, finding Sabady's responses in the interview subject to

multiple and "equally plausible" interpretations. Id. at 67. The court noted,

however, that it would "continue to look at it as [the petitioner] [thought] doors

[were] open." Id. The court rejected the petitioner's request to cross-examine

Sabady about whether she was consuming medications prescribed for O.K.:

6

> THE COURT: Let's just say for argument sake, allow it in outside the jury, voir dire. She admitted, yes, twice, I shot up with the baby's medicine. How does that show she engaged in the activities alleged here? By all of the circumstances that came into evidence, so far does not indicate that's the case. Now, maybe if some additional evidence comes in to tie her to the crimes, we can revisit it. From what you are saying, [the petitioner] didn't do this, she did. It's a propensity argument. What it says is, she's a bad mom, mistreating her child by using the medicine that the child needed and agreed didn't need it anyway; therefore, she committed the heinous acts. That's exactly what the statute says you cannot do. I remain unconvinced by the defense's effort to have the information admitted.

Id. at 75-76. The court clarified that the petitioner could "lay out the ground work" as to what O.K.'s medication was and who controlled it, but could not ask Sabady whether she was taking the medication herself. Id. at 76.

At the beginning of the next day, the court visited the issue again. Dkt. No. 8-12 at 3. The court stated that it continued to consider the petitioner's request to "delve into the drug use of Sabady," but that as evidence continued to come in, the court "remained more and more soundly convinced" that to do so would be "improper." Id. The court noted the lack of evidence "anywhere in the record" showing that Sabady used drugs the night of O.K.'s injuries, and observed that the law prevented the State from using evidence of the petitioner's drug use against him for the same purpose. Id. at 3-4.

The jury found the petitioner guilty on all counts. Id. The court sentenced the petitioner to thirty-six years of incarceration consisting of twenty-five years of initial confinement followed by eleven years of extended supervision. Id.

7

B.     Underline Underline First Postconviction Motion and Direct Appeal

On December 5, 2012, the petitioner filed a motion for postconviction relief in Milwaukee County Circuit Court, arguing that (1) the circuit court erred when it excluded evidence of Sabady's drug use and of O.K.'s addiction to drugs at birth; (2) his trial counsel was ineffective "for failing to pursue the admission of such evidence when subsequent opportunities arose" and for "failing to argue that the evidence was admissible to demonstrate motive, opportunity and to provide context;" and (3) a new trial was in the interests of justice because the trial court failed to consider such evidence. Dkt. No. 1-2.

On April 23, 2013, the court denied the motion. Id. at 1. The court ruled that it had not violated the petitioner's constitutional right to present a defense when it denied the petitioner's request to admit evidence of Sabady's drug use; the court reasoned that no other evidence suggested that Sabady had used any drugs on the days of the alleged crimes, and that evidence of her prior drug use would not prove that she had done so. Id. at 8-9. "[F]or the same reasons," the court explained, it would have denied trial counsel's request to admit the evidence at various times during trial when, according to the petitioner, "the door was opened." Id. at 9-10. The court denied the petitioner's interest of justice claim, finding that the evidence was not admissible under any of the theories that the petitioner asserted in his motion. Id. at 11.

Judge Duffin recounted the facts of the petitioner's appeal of his conviction and the circuit court's denial of his postconviction motion:

> [The petitioner] unsuccessfully appealed (ECF No. 1-3) and the
> Wisconsin Supreme Court denied review (ECF No. 8-3). He argued

8

Case 2:16-cv-01054-PP   Filed 11/23/20   Page 8 of 27   Document 19

on appeal and he argues before this court that he was unconstitutionally denied the right to present a defense when he was prevented from introducing evidence that O.K. suffered from neonatal abstinence syndrome (i.e., drug withdrawal) following his birth, and that Sabady reported to a detective that she used drugs five times in the two months following O.K.'s birth. The court has no further details on Sabady's reported drug use, including when any specific use occurred. [The petitioner] also argues his trial counsel was ineffective for not again trying to introduce this evidence when he alleges the door was opened to its admission.

Dkt. No. 15 at 5.

In his brief to the Wisconsin Court of Appeals, the petitioner cited United States Supreme Court cases outlining the general contours of the right to present a defense. Dkt. No. 8-4 at 17-18. For example, he stated that "[a] defendant has a state and federal constitutional right to present a defense," id. at 17 (citing Pennsylvania v. Ritchie, 480 U.S. 39, 40 (1987)), and that "[j]urors are 'entitled to have the benefit of the defense theory before them so that they [can] make an informed judgment as to the weight to place on [a witness's] testimony which provided "a crucial link in the proof,""" id. at 18 (citing Davis v. Alaska, 415 U.S. 308, 317 (1974)). The petitioner included three citations to Chambers v. Mississippi, 410 U.S. 284 (1973)), stating that (1) "[t]he right to present a defense includes the right to offer testimony by witnesses and to compel their attendance," (2) "few rights are more fundamental than that of an accused to present witnesses in his own defense," and (3) the right to present testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Id. (quoting Chambers, 410 U.S. at 295, 302). The remaining ten pages of the petitioner's briefing on this claim asserted that the trial court erred because it excluded evidence that satisfied the

9

Wisconsin Supreme Court's test in <u>State v. St. George</u>, 252 Wis. 2d 499 (2002). <u>Id.</u> at 18-28.

In its order affirming the petitioner's conviction and denial of his postconviction motion, the Wisconsin Court of Appeals explained that the constitutional right to present evidence is not absolute, but extends to relevant evidence not substantially outweighed by its prejudicial effect. Dkt. No. 1-3 at 7-8 (citing <u>State v. Stutesman</u>, 221 Wis. 2d 178, 182 (Ct. App. 1998)). The court discounted the petitioner's argument that the proffered testimony satisfied the Wisconsin Supreme Court's test for admissibility as stated in <u>St. George</u>, clarifying that <u>St. George</u> pertains specifically to expert testimony. <u>Id.</u> at 8-9. The Court of Appeals determined that even had <u>St. George</u> applied, the petitioner had not made the requisite showing that the excluded evidence was clearly relevant to a material issue. <u>Id.</u> at 9. The court reasoned that the petitioner sought to show that Sabady used drugs generally "without demonstrating that she was under the influence of an intoxicating substance at any relevant period of time." <u>Id.</u>

The court then analyzed and rejected the petitioner's arguments regarding the relevance of the evidence of Sabady's drug use and O.K.'s health condition at birth. Evidence of Sabady's drug use was irrelevant to her credibility, perception and recall, the court concluded, because the petitioner did not show that Sabady was intoxicated "at any relevant period of time." <u>Id.</u> The court rejected the petitioner's claims that the evidence showed motive and opportunity, finding them "neither developed nor supported." <u>Id.</u> at 10. The

petitioner showed the court no "logical reason that Sabady's drug use provided an opportunity to injure O.K." or motive to "point the finger" at the petitioner. Id. "[A]ssertions about Sabady's opportunity and motive," the Court of Appeals determined, "add[ed] up to only a conclusory propensity argument, a theory that Sabady's past drug use was evidence that she caused O.K.'s life-threatening injuries." Id. at 10-11. The court found this "[m]ere propensity evidence" irrelevant under state law. Id. at 11 (citing State v. Muckerheide, 298 Wis. 2d 553, 569 (2007)). The court rejected the petitioner's argument that the evidence was relevant to provide context under State v. Hunt, 263 Wis. 2d 1 (2003), finding that the petitioner "failed to show that Sabady's drug use and O.K.'s condition at birth were a part of the events that caused the life-threatening injuries" and that the case otherwise offered no meaningful guidance because it addressed sex crimes. Id. at 11. Even if the circuit court did erroneously exclude the evidence, the Court of Appeals concluded, the error was harmless. Id. at 12. The court concluded that beyond a reasonable doubt, a rational jury would have rendered the same guilty verdicts had it heard the evidence. Id.

The court rejected the petitioner's ineffective assistance of counsel claim. Id. at 14-15. Because it concluded that the petitioner's claim "lack[ed] any suggestion that the State presented inadmissible evidence," the court found nothing deficient in Attorney Steinberg's "fail[ure] to renew efforts to admit evidence of Sabady's drug use 'when witnesses opened the door.'" Id. The court explained that the alleged deficiency did not result in prejudice because the

11

court would have denied any other attempts to admit the evidence. Id. at 15. The Court of Appeals concluded that the interests of justice did not require a new trial because the circumstances of the petitioner's conviction were unexceptional. Id. at 16.

        C.      Federal *Habeas* Petition

           1.     *The Petitioner's Brief*

The petitioner filed this federal *habeas* petition on August 9, 2016, asserting three grounds for relief. First, he argues that due to the exclusion of the evidence of Sabady's drug use and O.K.'s health condition at birth, the Wisconsin courts violated his Sixth Amendment right to confrontation, to cross-examination and to present evidence. Dkt. No. 2 at 7. The petitioner argues that the Wisconsin courts violated Chambers, 410 U.S. 284, and Davis, 415 U.S. 308, by failing to "closely examine" his right to present evidence and weigh it against the state's interest in exclusion. Id. at 13-14.

Second, the petitioner asserts a violation of his Sixth Amendment right to the effective assistance of counsel because of trial counsel's failure to argue the admissibility of evidence of Sabady's drug use and O.K.'s condition under Wis. Stat. §904.04 and Hunt, 263 Wis. 2d 1, and trial counsel's "failure to renew his motion to admit that evidence when various witnesses opened the door to that evidence during trial." Id. at 7. The petitioner contends that the Wisconsin courts unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984) when they denied his ineffective assistance of counsel claims. Id. at 15.

Third, the petitioner asserts that the Wisconsin courts unreasonably determined the facts and unreasonably applied federal law as determined by the United States Supreme Court. Id. at 7-8.

2.    *The Respondent's Opposition Brief*

The respondent argues that the trial court reasonably excluded the evidence as propensity evidence, reasoning that at most, Sabady's past drug use had limited probative value with respect to the cause of O.K.'s injuries. Dkt. No. 11 at 17-18. The respondent argues that the risks of unfair prejudice, misleading the jury and creating a "mini-trial" substantially outweighed that limited value. Dkt. No. 11 at 17-18. The respondent asserts that for the same reasons, the trial court reasonably excluded evidence of O.K.'s addiction at birth. Id. at 20. Adding that the petitioner was able to "fully" confront his accusers, the respondent concludes that the state courts did not violate the petitioner's right to present a defense. Id. at 21.

The respondent contends that even if the Wisconsin courts erred, that error was harmless because it did not substantially or injuriously affect the outcome of the petitioner's trial. Id. at 21-22 (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); Johnson v. Acevedo, 572 F.3d 398, 403-04 (7th Cir. 2009)). He reasons that the petitioner's defense was "severely damaged [] by his own inconsistent accounts of what happened." Id. at 23-24.

The respondent asserts that the Wisconsin Court of Appeals did not unreasonably apply Strickland; he stresses that an attorney does not perform deficiently by failing to raise a meritless issue, and that a defendant does not

suffer prejudice from a an attorney's failure to raise a meritless issue. Id. at 27-29.

        3.    *The Petitioner's Reply*

The petitioner raises new arguments upon "further review of the relevant case law." Dkt. No. 13 at 1. He contends that because the Wisconsin Court of Appeals did not address the merits of his claim that the trial court violated his right to present a defense, this court should review it under 28 U.S.C. §2243. Id. at 2, 5-6. He cites Kubsch v. Neal, 838 F.3d 845, 858 (7th Cir. 2016) for its discussion of "a number of lessons from the Chambers line of cases." Id. at 7. He argues that (1) his claim deals with the exclusion of evidence and not with a limitation on the use of evidence, id. at 8; (2) his conviction was for "very serious felony charges," id.; (3) Sabady's drug use and O.K.'s condition at birth were relevant to Sabady's motive and bias, id.; (4) O.K.'s injuries could have occurred over a longer period of time than the trial court discussed, and "[a] lengthier period of time . . . makes the proffered evidence even more relevant," id. at 8-9; (5) Sabady's drug use bears on her ability to recall and her "opportunity to hurt O.K.," id. at 9; (6) the evidence was reliable, id. at 10; and (7) the exclusion of the evidence was arbitrary, id. The petitioner argues that the error resulting from the exclusion was not harmless. Id. at 11. Rather, he asserts that it "pervaded the entirety of the trial." Id.

    E.    Judge Duffin's Report and Recommendation

Judge Duffin recommended that the court deny the petition. Dkt. No. 15. Judge Duffin rejected the petitioner's argument that the "more generous"

pre-AEDPA (Antiterrorism and Effective Death Penalty Act) standard of 28 U.S.C. §2243 should apply; he concluded that the petitioner had raised that argument "for the first time in reply" and that the Wisconsin Court of Appeals adequately had addressed the merits of the petitioner's constitutional claims. Id. at 6-7 (citing dkt. no. 1-3 at ¶ ¶ 17, 30). Conceding that the Wisconsin Court of Appeals cited no United States Supreme Court precedent with respect to the petitioner's right to present a defense claim, Judge Duffin found that the court "relied on decisions of the Wisconsin Supreme Court, which in turn applied the applicable federal constitutional standards," and thus that AEDPA's deferential standard controls the petitioner's claims on *habeas* review. Id. at 7.

      1.   *Exclusion of Evidence*

Judge Duffin concluded that the Wisconsin Court of Appeals neither unreasonably applied federal law as determined by the United States Supreme Court nor based its decision on an unreasonable determination of the facts in light of the evidence presented when it excluded evidence of Sabady's drug use and O.K.'s health condition. Id. at 10. He recounted the Court of Appeals' findings that (1) "many of [the petitioner's] arguments about the relevance of Sabady's drug use were vague and undeveloped," id. at 9; (2) in Wisconsin, evidence of a witness's intoxication is only admissible "if there is evidence that the witness was intoxicated at the relevant time," id.; (3) the petitioner offered no evidence that Sabady was intoxicated at the time of O.K.'s injuries, id.; (4) Sabady's drug use was irrelevant to whether she had the opportunity to injure O.K., and provided no motive, id.; (5) Sabady's drug use was unnecessary "to

15

provide context to the crimes," id. at 10; and (6) "even if the circuit court erred, the error was harmless." Id.

Judge Duffin agreed. He noted the lack of "evidence that O.K.'s injuries were plausibly attributable to Sabady's prenatal drug use." Id. He found that any evidence of Sabady's drug use before O.K.'s birth was not only irrelevant, but that it posed an "obvious and substantial risk of misleading the jury and confusing the issues." Id. Judge Duffin concluded that Sabady's drug use after O.K.'s birth was irrelevant as well; he reasoned that under the State's evidence, "O.K.'s eye injuries likely occurred in the roughly [twelve]-hour period following the family's trip to Sam's Club on July 9." Id. at 11. "There is no evidence," Judge Duffin stated, "that Sabady used drugs" during that period. Id. He noted that while "the state was unable to similarly narrow down the . . . broken ribs and lacerated liver," nothing indicated "that O.K. was in any distress prior to the evening of July 9." Id. at 11-12. Judge Duffin concluded that these facts, combined with Sabady's observations of O.K.'s injuries and the petitioner's admission that he dropped O.K., suggested that the rib and liver injuries occurred during the same twelve-hour period as O.K.'s eye injuries. Id. at 12.

Judge Duffin saw nothing suggesting "that O.K.'s injuries occurred at a time other than when he was in [the petitioner's] care;" he found that any evidence "that Sabady used drugs five times since O.K.'s birth was of, at best, minimal relevance" to the petitioner's child abuse charges. Id. (citing dkt. no. 8-10 at 27). He stressed that in any event, "it was not as if the jury was left with the impression that [the petitioner] alone used drugs. After all, the jury heard

16

[the petitioner's] statement, '. . . *we're* drug addicts.'" Id. Judge Duffin didn't perceive how Sabady's drug use was "plausibly relevant" to the child neglect charge based on the petitioner's delay in seeking treatment for O.K.'s injuries. Id.

### 2. *Ineffective Assistance of Counsel*

Judge Duffin found that the Wisconsin Court of Appeals properly rejected the petitioner's ineffective assistance of counsel claim. Id. at 15. Reasoning that the court "in all likelihood" would have excluded the evidence regardless of the argument for its admissibility, Judge Duffin concluded that the petitioner suffered no prejudice from his trial counsel's failure to make arguments that the State opened the door to evidence of Sabady's drug use at various points in the trial. Id. Judge Duffin opined that stressing Sabady's drug use "would have simply created the impression that [the petitioner] left his son in the care of a drug addict." Id. at 16. Judge Duffin noted that (1) because Sabady "never incriminated [the petitioner]," challenging her ability to recall may have suggested that the petitioner *did* abuse O.K., and (2) emphasizing Sabady's drug use may have been self-defeating because the petitioner—a self-described "near daily user"— used drugs more frequently than Sabady. Id.

### F. Petitioner's Objections

The petitioner timely filed objections to Judge Duffin's report and recommendation. Dkt. No. 16. He disagrees with Judge Duffin's conclusion that the pre-AEDPA standard does not apply, urging this court to find that the Wisconsin Court of Appeals did not sufficiently address his claims under

17

federal law. Id. at 1-2. The petitioner contends that Judge Duffin failed to address Kubsch, 838 F.3d 845, which, he says, outlines the inquiry for determining whether a Wisconsin court violated the constitutional principles discussed in Chambers, 410 U.S. 284, and Davis, 415 U.S. 308. Id. at 5. Finally, the petitioner disagrees with Judge Duffin's analysis of his ineffective assistance of counsel claim. Id. at 9-10.

## II.    Analysis

### A.    Standard

Judge Duffin's recommendation to deny the petition involves a dispositive issue. A court reviewing a recommendation on a dispositive issue is governed by Federal Rule of Civil Procedure 72(b)(1), which required Judge Duffin to "conduct the required proceedings" and "enter a recommended disposition." Fed. R. Civ. P. 72(b)(1). A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). A party must specify "each issue for which review is sought," but need not specify "the factual basis of the legal objection." Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999). The district court must conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only

partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted).

B.  Analysis

1.  *Pre-AEDPA standard*

The petitioner objects to Judge Duffin's conclusion that because the Wisconsin Court of Appeals addressed the petitioner's claims "on the merits," AEDPA's deferential standard controls his claims on *habeas* review. AEDPA allows a federal court to grant a *habeas* petition "only if a state court's ruling on a federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"

That deferential standard applies to claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. §2254(d). Where the state court did not reach a federal constitutional claim, "the claim is reviewed *de novo*." Cone v. Bell, 556 U.S. 449, 472 (2009). When the state court did not squarely address the merits of a *habeas* claim, the federal court reviews the claim "under the pre-AEDPA standard of 28 U.S.C. §2243, under which [it] 'dispose[s] of the matter as law and justice require.'" Toliver v. Pollard, 688 F.3d 853, 859 (7th Cir. 2012) (quoting Morales v. Johnson, 659 F.3d 588, 599 (7th Cir. 2011)).

The threshold for deciding whether a state court decision qualifies as a decision "on the merits" under AEDPA is low. Harris v. Thompson, 698 F.3d

19

609, 623 (7th Cir. 2012). "The state court need not explain its reasoning in rejecting the petitioner's federal claim." Id. (citing Harrington v. Richter, 562 U.S. 86, 98 (2011)). "AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court." Steffes v. Pollard, 663 F.3d 276, 282 (7th Cir. 2011) (quoting Muth v. Frank, 412 F.3d 808, 815 (7th Cir. 2005)). AEDPA does not require the state court to "cite or even be aware of any particular cases." Thompson, 698 F.3d at 623 (citing Harrington, 562 U.S. at 784). "Sometimes even saying nothing at all will suffice." Id. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 624 (citing Harrington, 562 U.S. at 98-99).

The petitioner asserts that the Wisconsin Court of Appeals "never addressed head on [his] argument under *Chambers* and its progeny that the trial court's decision to exclude the proffered evidence violated his right to present a defense under the Sixth and Fourteenth Amendments." Dkt. No. 16 at 2-3. He faults the Court of Appeals for never citing the Sixth or Fourteenth Amendments to the United States Constitution, or the United States Supreme Court's decisions in Chambers, 410 U.S. 284, and Davis, 415 U.S. 308. Id. at 3.

AEDPA does not require the state court to cite any particular cases for the purpose of addressing a petitioner's claim "on the merits." Thompson, 698

F.3d at 623. While the petitioner is correct that the Wisconsin Court of Appeals did not explicitly cite either the Sixth or Fourteenth Amendments, the petitioner didn't cite those amendments in his briefs to that court; rather, he generally discussed the constitutional right to present a defense and evidence. See Dkt. No. 8-4 at 11, 17-19. The Court of Appeals discussed that same general right in its decision. See Dkt. No. 1-3 at 7-8.

The petitioner maintains that the Court of Appeals reviewed his proffered evidence under St. George, and that St. George does not "adequately consider" the constitutional rights discussed in Davis, 415 U.S. 284, and Chambers, 410 U.S. 308. Dkt. No. 16 at 3. The petitioner states that aside from a "conclusory statement" observing his constitutional right to present a defense, the Court of Appeals failed to give "real" consideration to whether Wis. Stat. §904.04 violated his rights under the Sixth and Fourteenth Amendments. Id. at 4.

The Court of Appeals conducted an analysis under St. George; the petitioner's briefs to that court argued that the evidence should have been admitted under St. George. Dkt. No. 8-4 at 19-28; see also dkt. no. 8-6 at 4, 7. The Court of Appeals did not err or fail to consider the petitioner's claims when it considered the application of St. George. On the contrary, it addressed the bulk of the petitioner's argument. Further, it did so "[a]ssuming without deciding that the St. George test applie[d]." Dkt. No. 1-3 at 9. The court clarified that even if it agreed with the petitioner that the circuit court erroneously limited his defense, "any such error was harmless" because it was "satisfied beyond a reasonable doubt that a rational jury would have delivered

21

precisely the same guilty verdicts in this case had the jury also heard evidence that O.K. was born addicted to heroin and that Sabady 'used drugs.'" Id. at 12-13.

Even if the petitioner had properly raised this argument (in other words, if he'd raised it in his petition, rather than for the first time in his reply), the court would reject it. The Court of Appeals noted the petitioner's "conten[tion] that the circuit court's rulings deprived him of the constitutional right to present a defense." Dkt. No. 1-3 at 7. The court analyzed and rejected the substance of that constitutional claim. Id. at 7-12. Because the last reasoned state court decision addressed the petitioner's claims on the merits, the 28 U.S.C. §2254(d) standard applies to the petitioner's claims on *habeas* review.

### 2. *Exclusion of evidence*

The petitioner's second objection rehashes the claim in his initial brief that the Wisconsin courts unreasonably applied Chambers. Dkt. No. 16 at 5. He adds that Judge Duffin "did not address the application of Kubsch v. Neal, 838 F.3d 845 (7th Cir. 2016)," a case that the petitioner raised for the first time on reply[2] which, he states, "clarified the main considerations when determining whether the Wisconsin courts violated the constitutional principles set forth in Chambers and Davis." Id. According to the petitioner, in Kubsch, the Seventh Circuit identified "lessons from the Chambers line of cases" that this court should apply to his case. Id. The petitioner asserts that under those "lessons,"

---

[2] The petitioner explains that he did not cite Kubsch in his initial brief because the Seventh Circuit had not yet decided the case. Dkt. No. 16 at 5.

22

this court must conclude that the circuit court should have admitted the proffered evidence despite the exclusionary rule. Id. Conceding that it is difficult to argue that a state court unreasonably applied the "fact-based" and "very general" standard in Chambers, 410 U.S. 284, and Davis, 415 U.S. 308, the petitioner asserts that the Wisconsin courts did so in his case because they did not consider his rights under those cases at all. Id. (quoting Dunlap v. Hepp, 436 F.3d 739, 745 (7th Cir. 2006) (some quotation omitted).

First, "arguments made for the first time in a reply brief are generally treated as waived." Hernandez v. Cook Cty. Sheriff's Office, 634 F.3d 906, 913 (7th Cir. 2011). The petitioner filed his initial brief on August 9, 2016. Dkt. No. 1. The Seventh Circuit decided Kubsch on September 23, 2016—over a month before the respondent filed his opposition brief. The petitioner never asked to supplement his original brief and did not give the respondent an opportunity to respond to the arguments he grounds in Kubsch.

Even had the petitioner asked to supplement his initial brief to address Kubsch, that case is a decision of the Seventh Circuit Court of Appeals, which means that while it is instructive, it does not constitute "clearly established federal law" for the purposes of habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012) ("circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA.") (citing 28 U.S.C. §2254(d)(1)).

Perhaps the petitioner's references to Kubsch is meant to support his argument that the Wisconsin courts unreasonably applied Chambers. Judge

23

Duffin analyzed the petitioner's claim that the circuit court unconstitutionally excluded the evidence of Sabady's drug use and O.K.'s condition as a claim based on the right to present a defense. Dkt. No. 15 at 7. Judge Duffin considered the relevant case law for the right to present a defense, dkt. no. 15 at 8-9, against which he analyzed the Wisconsin Court of Appeals' decision affirming the petitioner's convictions. Id. at 9. On de novo review, this court agrees with Judge Duffin's conclusion. The Court of Appeals reasonably rejected the petitioner's claim that the circuit court violated his right to present a defense.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers, 410 U.S. at 302. A criminal defendant has a fundamental constitutional right to a "meaningful opportunity to present a complete defense." Fieldman v. Brannon, 969 F.3d 792, 800 (7th Cir. 2020). "It's well established, however, that the constitutional rights to cross-examine witnesses and present relevant testimony are not absolute." Safraz v. Smith, 885 F.3d 1029, 1037 (7th Cir. 2018). A trial judge may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. (quoting Holmes v. South Carolina, 547 U.S. 319, 326 (2006)). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes, 547 U.S. at 324 (citing United States v. Scheffer, 523 U.S. 303, 308 (1998)). That latitude, in turn, is limited; "when an evidentiary ruling 'infring[es] upon a weighty interest of the

24

accused' and is 'arbitrary or disproportionate to the purposes [the rule is] designed to serve,'" the rule must "yield to the defendant's fundamental due-process right to present a defense." <u>Fieldman</u>, 969 F.3d at 801 (citing <u>Holmes</u>, 547 U.S. at 324; <u>Kubsch</u>, 838 F.3d at 855-56).

The Wisconsin Court of Appeals concluded that (1) the petitioner's proposed test for admissibility under <u>St. George</u> pertained to expert testimony, and (2) even if <u>St. George</u> applied, the petitioner failed to make the requisite showing that the excluded evidence was clearly relevant to a material issue. Dkt. No. 1-3 at 8-9. The Court of Appeals did not unreasonably apply federal law as determined by the United States Supreme Court, or base its decision on an unreasonable determination of the facts in light of the evidence presented. The Court of Appeals sufficiently addressed under its own case law the remainder of the petitioner's arguments as to the admissibility of the evidence of Sabady's drug use and O.K.'s condition at birth. Nothing in the Court of Appeals' decision unreasonably applied <u>Chambers</u>, 410 U.S. 284, or any other federal law as determined by the United States Supreme Court of which this court is aware. The petitioner has identified no United States Supreme Court decision that required anything of the Wisconsin courts that they failed to do.

### 3. *Ineffective assistance of counsel*

The petitioner's objection regarding his ineffective assistance of counsel claim states that the petitioner "relies and incorporates his arguments made both in his direct appeal" and to this court. Dkt. No. 16 at 9. The petitioner otherwise makes no specific objections to anything in Judge Duffin's report as

to ineffective assistance of counsel, which means that the petitioner has not triggered *de novo* review by this court. Judge Duffin's conclusion that the Wisconsin Court of Appeals reasonably rejected the petitioner's ineffective assistance of counsel claim was not clearly erroneous. Judge Duffin properly addressed the Wisconsin Court of Appeals' rejection of the petitioner's ineffective assistance claim under <u>Strickland</u> and related cases. Dkt. No. 15 at 13-14. This court agrees with his conclusion and adopts it.

### III.   Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issue presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 472, 484 (2000) (internal quotations omitted). The court will deny a certificate of appealability; no reasonable jurist could debate that the petitioner's claims for *habeas* relief should be denied under 28 U.S.C. §2254.

### IV.   Conclusion

The court **OVERRULES** the petitioner's objections, dkt. no. 16, and **ADOPTS** Judge Duffin's recommendation to dismiss the petition, dkt. no. 15.

The court **ORDERS** that the petition for writ of *habeas corpus* is

**DISMISSED**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 23rd day of November, 2020.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27